Good morning Matthew Pritchard on behalf of the appellant officers and City of San Jose. I'll try to reserve about four minutes your honors okay I'll keep an eye on that. May it please the court the officers in this case are entitled to qualified immunity both because plaintiffs failed to state below that failed to state a constitutional violation below and because under the second prong of the qualified immunity analysis no clearly established law would have put these particular officers on notice that their conduct at the time of the Trump rally violated a constitutional right. Starting with the constitutional question threshold requirement for any state created danger claim is that the plaintiff established state action was responsible for the particular danger that that plaintiff alleges she or he faced. This is a different question and this is critical I think in this case from the question whether the state took an action and there was an alternative action available to the state that would have. Well the allegation is you bet there was an alternative action let him out by another entrance. Indeed your honor and that is not a state created danger claim precisely because that's that's not the state created question that excuse me state action question. Well no the argument is and the allegation of the complaint is there was a there was an angry mob waiting at the at this exit the police said you're going out that exit and we're not gonna let you out the other exit even though it's safer. That two reasons the first is to take the last part of your your formulation Judge Fletcher of that. There was no safety outside of the area where the people the protesters had gathered independent of state action and this is really important because the only reason that the plaintiffs could stay and the only reason that they could allege in their complaint that there was a particular area to the right where there was a relative absence of protesters as opposed to the area to the left where they were directed is because the police were there and that they were blocking off that other exit. Had the police not been blocking off that other exit there's just no question as a matter of common sense and based on the allegations elsewhere in the complaint. Common sense and allegations. Common sense usually means just take my word for it and not very strong. Allegations as I recall were that the other exits were safer. They could have escaped the mob by just taking another exit or going the other way on I 83 instead of the same way they could have gotten to their cars and the only reason they didn't is the cops forced them just like they forced that drunk guy who was I guess 86 at the bar to go freeze to death instead of go back for his jacket. It's very distinct from that your honor. They did indeed argue throughout their briefing on appeal and below that it was safer. That it would have been safer if they could have just gone the other way. Wasn't it a 12 v 6? Yes. Well that means that allegations of a complaint control. Sure. If they're allegations of fact. Those aren't allegations of fact by any means. Oh come on. The allegation is if I'd been able to go out the other exit it was safer. You got to live with that. That's in the complaint. We don't your honor and here if I could explain why. If that if that's not an allegation of fact that's an argument about the way things would have gone. You know we're not going to get anywhere if you insist that that's not an allegation of fact. Let me. They allege that it was safer. All right. So the plaintiffs also allege in the state of Amos versus page for example that had the police not called off private search efforts that the plaintiff the decedent in that case would have likely been rescued or his chances would have been increase of getting rescued. The reason this courts dismissed that at the pleading stage because it was it was a 12 v 6 motion to dismiss is that that is implausible on its face. This is not implausible on his face. If you take the danger that plaintiffs allege which is that uh they would have to front political opponents without police to protect them. That is the danger we're talking about here. All right. No that's not really the danger. The danger is that they were going to confront an angry mob and that they were going to get hurt. And they say the way we were sent by the police without any choice on our part was dangerous and indeed we did get hurt. If they had allowed us to leave by another exit it would have been safer. That's what they say. And you've got to assume that that's true. It may not turn out to be but for the moment it's true. So it's true. Let's assume that it is true that they will. You have to assume it's true. I don't see why it's implausible either. I mean it's plausible that if the police set up in a particular area where the mob is and they're purporting to let people out only if they run that gauntlet that it's not implausible that if they just sneak out another door and go a different way they won't have to run the gauntlet. Well let's take state action out of the equation altogether which is what you have to do given the backdrop constitutional principle that there is no entitlement to any kind of state protection. So if you take state action wholly out of the picture which is the necessary constitutional inquiry here you are left with a situation where plaintiffs are going to a political rally without any police protection at all. All right. There are no police. There's no one to protect them. The very opponents who may become violent in their opposition to you. That just inheres in the speech activity itself. When you take state action out of the picture here what you're left with is a group of people attending a controversial political rally with a candidate that is highly controversial in the area where he is speaking. Those people without police protection cannot plausibly allege that had the police been absent altogether from that rally they would not have faced hostile protesters from any exit that they left that rally from. That is that truly is implausible in the same way that it was implausible in the state of Amos. But I'm not sure that's the way we're supposed to look at it. The police are there. They have a ready mechanism according to the complaint may or may not be true of protecting these people and they fail to take advantage of it. Sure but that's just that's just inaction your honor so did in Johnson versus city of Seattle. It's not inaction once the police force them to run that gauntlet rather than just sneaking away. I mean I agree it's it's not implausible that the rumor gets around the hall they're beating us up when we because the cops are making us run a gauntlet so you stick your MAGA hat and in your pocket along with your pin and just sneak away. Your honor I agree it's an affirmative act unlike in Johnson that that I don't dispute there is an affirmative action in the absence of state action. Okay this is a critical inquiry. It's different from the inquiry whether once police got involved they could have taken different actions that would have been better than the one that they took. And if you take police action out of the out of the equation they don't dispute this. No one can dispute that they wouldn't have been safer. They   face the exact same danger of having to confront hostile political opponents without police protection. I just think that that follows and that follows from the state of Amos and it follows from city of Johnson versus city of Seattle. So well I'm not sure it follows at all from Johnson versus city of Seattle. What happens in the city of Seattle the police are doing their best to protect and Judge Allen's opinion twice says this is not the case where there is an affirmative act by the police that produces danger. Here we have an affirmative act by the police that produces danger. Not not a danger that wouldn't have existed without state action. That is just that's just I think clear your honor. And in the state of Amos they also allege an affirmative act. The affirmative act was halting private rescue efforts. I'm sorry you didn't hear that last time. In the state of Amos versus Page the plaintiffs there also alleged an affirmative act that was halting private rescue efforts for the guy who had wandered into the desert. The but we have to be we have to look at what would have realistically been possible in the absence of state action here. This person who wanders into the desert is facing inherently the danger of starvation and all of the other things here. What the state of Amos and Johnson do stand for is that there are certain activities that you when you allege that that's the activity you're engaged in. They are inherently there are dangers that in here in that activity wandering into the desert is one thing. Assuming the police don't make you wander into the desert. It's quite another if the police make you wander into the desert. Then it's more like that case of the guy who was drunk and the police made him walk home in his t-shirt. Your honor no one made police did not make plaintiffs go to the Trump rally. They didn't make the protesters go to the Trump rally. They have their own volition. But they made the rally people run the gauntlet of the anti rally people. Well first of all they didn't. There's nothing. There's no allegation. They don't allege that they were forced out of the building. They say that once they left they were left with a single exit. So you're saying they should have just stayed in the building at least until the demonstration ended. But that's not the hill I want to die on. I'm much more unless it's alleged. I am much more. It doesn't matter. Your honor Judge Klinefeld. What why it doesn't matter is just like wandering into a desert when you wander into a political rally where you're going to face political opponents. It doesn't matter what the even if that thing afterwards makes it more dangerous than the other alternative they could have come up with because you were already facing the danger. The specific danger that you allege caused your injury which is confronting political protesters because you already faced it. The state state action is absent. But I want to quickly address deliberate indifference before I run down more time. You know I'd like you to discuss whether the right was clearly established. All right, I'll do that then as well. Um, turning first to that judge Nelson, the right, I won't belabor endlessly the very, very clear admonitions of the Supreme Court and even this court recently in sharp versus County of Orange that the right can't be stated at a generalized level. You know, there's just no question here that that's exactly what happened. There is no case that deals with police officers at a political rally or any kind of protecting speech activity, which is very much a singular governmental undertaking. It's a very complex one. It requires balancing constitutional considerations with safety and other things. There is no case that would guide a reasonable officer on the scene of such an event on exactly what the contours are, when he can create an exit, a single exit versus multiple exits, when he can direct people in a certain way versus other ways. There just is no case that even remotely speaks to that conduct. So on that, I just think there's no question that the clearly established wrong, the admonition that we don't state rights at a generalized level, that wasn't followed. I also think as to deliberate indifference, Your Honors, I want to quickly emphasize, you know, this is an important, important part of the state created danger doctrine. It serves federalism and separation of powers interests insofar as it prevents the judiciary from intruding into the decision making of state and executive officials, except in those rare cases where the judicial conscience is shocked because, you know, there's just no justifiable reason for the action that the officers took. This case is a perfect demonstration of why that doc, that limitation is important. These officers faced a complicated situation of balancing the interests I just discussed between First Amendment rights and safety. They were faced with exactly two alternatives. Stick with the plan we have, which is to keep one skirmish line and not break that line or deviate from that plan without knowing exactly what's going to happen. If we open up one exit, surely the protesters, it's common sense would tell you we're going to move to that other exit. The only reason they weren't there before is because they closed off that exit. We don't know what's going to happen. That's not the kind of callous, shocking conduct that this court has ever found to shock the conscious. I should reserve the remainder of my time. Save some time. Good morning, Your Honors. May it please the Court. I'm Harmeet Dhillon for the appellees in this matter who are the plaintiffs in the case below. Your Honors, I think it is clearly established from the over 500 paragraphs of detailed allegations in the second complaint in this matter that the actions in this case taken by the police, they do shock the conscience. They did put the plaintiffs in a very dangerous position. There were alternatives. And it isn't just pointing to a single door and saying, going out that door. The allegations in the complaint talk about funneling people a block away and then forcing them towards a crowd of 400 protesters. Four hundred. Now, the allegations in the complaint point out that there were over 8,000 attendees at this rally. There were 400 protesters. This is not a case where, as the appellant is arguing, plaintiffs asked for it by going to a rally. They had the right to go to the rally. And while they don't have the right for the police to intervene and prevent the harm that would be there in an ambient fashion, they absolutely have the right, according to this Court and according to numerous authorities and the Supreme Court as well, that once the police take an action to put them into danger, once they put them in harm's way by forcing them to take a particular route when other routes were available and then by blocking exits, by not allowing them to flee, by refusing to intervene, by in fact stating in the earshot of violent protesters that we're not going to do anything and you have to keep going this way, by blocking them from reaching their cars at the garage blocks away from this protest. These are all actions that the police took that put the plaintiffs in danger and thereby created a duty for them to act. Ginsburg. Let's assume that we agree with you that they did put the people in danger. It was a pretty dumb plan that they came up with. The question is whether it was deliberate indifference, et cetera. But let's assume there was a constitutional violation. My question is, was the right clearly established so that qualified immunity could not be given at this stage? I mean, assuming we find at first a constitutional violation, unless we can find some case involving crowd control, do you have that case to show that it was clearly established? Well, Your Honor, I disagree that the standard is that we have to have a case that involves crowd control specifically. The standard articulate, but we do have a case, but let me start with that. Anderson v. Creighton actually stands for the proposition that it isn't required that the exact factual circumstances be established on all fours. That's not the standard, and this Court has repeatedly articulated the same standard. Well, there are lots of cases dealing with individuals. I mean, you put the person on the freeway, et cetera, and leave them alone. But I search and search, and I can't find any cases involving crowds where the police officer should know absolutely that he should do it. Go ahead. The Johnson case is actually a case specifically where the Ninth Circuit applies the standards to crowd control. Now, the factual posture of that case is different. That is a summary judgment case, number one. And qualified immunity was granted. And only at that level, Your Honor. And after applying the standards, the Court then held that on the facts of that case. I'm not so the predicate is was there a constitutional violation. And if I'm not mistaken, what the Court held there at the summary judgment stage was that there was no constitutional violation, because all that the plaintiffs complained about in that case was a deficient crowd control plan. And that was insufficient. There was not the allegation that we have in this case that the crowd control plan or the choice between two different types of plans put the plaintiffs in such danger that it rose to a constitutional level and it shocked the conscience. And I would agree. But you won below not because of the deficiency of the plan and the abstract. You won below because, as it turned out, this wasn't working. I mean, we're not talking about deficiency of the plan in some abstract way. It's when they are leaving, there is a clear and present danger right there in front of them, and the police say, you're going that way right into the danger. This is not sort of at the planning stage back when the police chief was setting it up. We've got the, I mean, you didn't win on that ground. That is correct, Your Honor. We've argued a number of grounds below, as the Court is aware. And Judge Koh agreed with us on this ground. And it is amply supported. And so, you know, just back to the Johnson case, Your Honor, Judge Nelson, I think it is clearly established there that the qualified immunity analysis can apply to the crowd control situation. But in that case, with a fully developed record, not at the state that we are here, they simply didn't meet it. And so that's the distinguishment of this case, but the precedent is there. And Your Honor has also asked us to address a case, Henry A versus Wilden. And that case, Your Honor, stand for the proposition actually in a fairly broadly construed concept that the entire foster state system of Nevada, including numerous specific homes in which the plaintiffs were placed, was so dangerous that as a matter of law, it was deliberate indifference to place children into those homes. And what's important about that case is that in that case, this court says that it isn't necessary for there to be a freedom from harm for the police to be liable for creating the harm. In fact, the fact that dangerous foster home existed in that situation is irrelevant. This court used the word irrelevant to talk about the pre-existing danger. So all of the argument that we just heard from appellant's counsel with respect to the fact that Trump supporters should have known that they were putting their lives at risk by going to a political rally is, according to this court, irrelevant. We have pled in excruciating detail that there were numerous paths to safety. And what happened here was the police operated almost like a deus ex machina on the gates of Thermopylae, driving people towards danger in a narrow channel, and then causing that harm when it was right in front of their eyes. It wasn't theoretical, it wasn't five blocks away, it wasn't it might happen. This does shock the conscience, Your Honor, and this is demonstrated by the allegation of the complaint that 600 members of the public immediately complained to the city within days about this. You don't see that in normal circumstances. And we have to also understand that we're operating in a system here where if the police give you orders, we've all seen on television what happens if you don't follow the police's orders. You go in a different direction, your life could be at risk from the police. So these citizens followed the orders of the police. They didn't have a choice, and they were harmed as a result. And under our well-established law here of qualified immunity, qualified immunity is not available. But on top of that, given numerous precedents, Your Honor, Judge Kleinfeld has talked about the hypothermia cases. There are numerous hypothermia cases in the Ninth Circuit. There are cases of women being placed in situations in the Wood case, where the lady was raped after the police officer made her get out in the middle of a dangerous area. There are other rape cases. There's the case of the nurse. It seems plain to me that the drunk guy who froze to death and the woman who was raped, the principles seem pretty clearly to apply. However, the facts are not the same. And the Supreme Court says you need a case that's at a low enough level of generality. Now, I have always been troubled by that phrase. It reminds me of the old law school joke about law of the horse. If you have a case, a dispute about a contract involving a horse, you look up contract law, not horse law. So I never know quite what they mean by generality. However, it may mean crowd control cases. And if it does, I gather you don't have one. And that strikes me as the most delicate part of your argument. If you have any more that you've thought of since answering Judge Nelson's question on the same thing, I'd like to hear it. Well, Your Honor, I submit that the Johnson case does apply here. And if it were, in fact, the law that you had to have a case on all fours for there to be notice, then this court would never have created the Wood decision or the Grubb decision or any of the other cases that have stood the test of time on qualified immunity that a circumstance where the police should know that they're That puts them on notice. In the Hope case, the United States Supreme Court states that the officials can still be on notice if their conduct violates established law, even in novel factual circumstances. That's the United States Supreme Court precedent. I don't believe it's been overruled by the more recent decisions that add the language that Your Honor points out is somewhat difficult to satisfy. But here, where this court has applied the analysis to a crowd control situation, yet reached a different conclusion. And that's sufficient to put them on notice. And there have been numerous statements from this court and from the United States Supreme Court that the burden is on the police. The burden is on the government to educate themselves about that. And so whether these individual officers satisfied that burden for themselves and read the case law or were properly advised, that is not my burden at this stage in the case. And so I respectfully submit that case is close enough. But the other cases that we've cited in our papers make it clear that where a situation is so shocking as this, the police should be on notice that sending people into danger, just like sending them out into the cold in Montana in the winter to freeze, telling a sexual abuser that the person next door reported him to the police, that's the Kennedy case. Those are all individual cases. And I guess my – I'm back to my same problem. I don't see how the Johnson case is the kind of case a police officer could read and say, boy, let me just say, I think a reasonable person would not force those people through. I mean, I think that we should establish that at this point with crowd control. You can't do that. But whether they get qualified immunity is the question of whether or not there is something that you can point to that would clearly say to that police officer, you can't do that. Well, where this Court applied that analysis in Johnson, I think that is an example. I understand the concern that the different conclusion was reached, but that was at a different stage of the case. That's another critical distinction. It may be the case that when we come back to this Court, if we have to, later on in the stage of this case, where I may have things I'd like to appeal and other decisions that Judge Koh did in this case below, but the factual record may be different at that point. And we haven't had a chance to conduct zero discovery in this case. We have had a chance to not take all the depositions of these officers to know what they knew. We have not had a chance to take the depositions of any of the other officials in the city to know what they knew. The city has refused to respond to FOIA requests, et cetera. So we are at one end of the spectrum versus the other end of the spectrum in that case. That's the good part of your case. It's 12 v. 6, so you get to get adjudicated on the facts in the complaint. And, Your Honor, to that point, almost all of the cases relied upon by the appellant in this matter are summary judgment cases. And those are cases at the other end of the spectrum. And, you know, this Court has had a chance at that point to see a fully developed record, and that is a significant distinction here. We should be allowed the 500 paragraphs plus of allegations, the shocking behavior detailed in this complaint, to have our chance to prove this case and to hold police responsible for their outrageous conduct in this case as alleged in the complaint. Are there other questions, Your Honors? I understand that there was other issues, Monell liability and so forth, addressed. And I briefly would state on that point, Your Honor, that we don't believe the exercise of pendant jurisdiction is appropriate in this case. For one thing, there are different factual standards to be applied. And the Monell analysis that Judge Koh is allowed to go forward is on a completely different point that doesn't even enter into the discussion or analysis in appellant's briefing with respect to the qualified immunity issue, and namely, that's the ratification issue. So since those issues are not . . . Summary judgment will be a lot worse for you because it will come after the police have been able to set out what they claim are the facts. I understand, Your Honor. And obviously, we'll have some challenges to face at that point in the case. And I think there are a number of things that we have a hard row ahead. These are difficult cases. We understand that. And understanding that, we think this is a shocking case that needs to go forward. Okay. Thank you. Thank you, Your Honors. Ms. Moss. Thank you. I'll pick up, Judge Nelson, where you were sort of last line of inquiry that you had, which is, I want to emphasize, I think there's no question here that even if there is a decision in the Federal Register that says, you know, in theory, crowd control decisions can give rise to substantive due process violations, of course that's true. Anything can give rise to substantive due process violations if, you know, it meets the standards of the State Created Danger Doctrine. What certainly neither Johnson or any other case would do would tell a reasonable officer how he needs to conduct himself. Let me give you a hypothetical case that's been rattling around in my mind about this argument, that let's suppose the facts are not as alleged here. Let's suppose the facts are the police lines seems to be working, and the police are forcing people to go a particular way out the entrance, but then some protesters blow up a fuel truck, and there's a huge fire. And it's not people pounding protesters on the head with a bag of rocks, it's this huge fire. And the police keep telling the rally attendees, you have to go that way. That's our orders. That's our plan. That's the way you go. But you can't go that way without getting too close to the fire, and you're at risk of the police using force to stop you if you try to go a different way, or having to run through the fire and hope you don't get burned too badly. I don't think there's ever been a case like my hypothetical case. So I think you would say that because there's never been a case about a fuel truck being set on fire and it's too dangerous to go past it, the police can say, well, I'm just a cop. What do I know? I mean, I didn't know there was anything against the law about that. So I made the people do that, because that was our plan. They would have qualified immunity for forcing people into the fire. Probably not. That's your case, I think. I think that's your argument. It isn't, Your Honor. The difference is, that would be an example, as outlined in Sharp and White v. Polly, of where the constitutional violation is so obvious, that there was no legitimate law enforcement safety, other justification for the exact conduct, which is making someone continue to go into a fire when there's a perfectly safe, open alternative. There were law enforcement reasons for the officers to stick with the single-exit crowd control plan here. They did not have the benefit of hindsight to know that not opening up, and by the way, we still don't know this, opening up an alternative exit would have been safer. They don't know that people wouldn't have attacked. Do know it for the police. That sounds like summary judgment, that is to say all we have now is the allegation. Well, the allegations, Your Honor, are established because they allege in their complaint that this was a crowd control plan formulated for the purpose of crowd control safety, that when the officers were following that plan, we know that they were relying on at least this idea of safety, even if they did a bungled job at it. And so those allegations show that both there was no deliberate indifference and that they're entitled to qualified immunity. I had hoped to conclude, but can I have 20 seconds to do that? Why don't you wrap up? Thanks. Your Honors, I just want to emphasize in closing that because I think in the Bay Area we see this all the time, there are lots of situations where police are facing this difficult situation of protecting people engaged in speech activity. It's a really difficult thing. And what I think this case does and the constitutional holding that this creates a danger, it really does raise the specter of due process claims every time police try to do what we hope they would do, which is protect people who engage in speech activity. So for that reason, I'm asking the Court to vacate the 1983 holding in its entirety. Okay. Thank you very much. Thank both sides for their argument. The case is submitted. Hernandez v. City of San Jose, submitted.
judges: D.W. Nelson, Kleinfeld, W. Fletcher